UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KEVIN BENDER and PATRICIA       :
BENDER,                         :
                                :      HONORABLE JOSEPH E. IRENAS
        Plaintiffs,             :
                                :   CIVIL ACTION NO. 05-cv-216 (JEI)
    v.                          :
                                :
MONROE TOWNSHIP, MONROE         :              **OPINION**
TOWNSHIP POLICE DEPARTMENT,     :
PATROL OFFICER JOHN MCBRIDE,    :
PATROL OFFICER BART MCILVAINE,  :
PATROL OFFICER MICHAEL J.       :
DORAN, and SGT. ROBERT CLARK,   :
                                :
        Defendants.             :


**APPEARANCES:**

DAVID A. AVEDISSIAN, ESQUIRE, LLC
By: David A. Avedissian
135 Kings Highway East
Haddonfield, NJ 08033
     Counsel for Plaintiffs

VELAHOS RICHARDSON, LLC
By: Allan E. Richardson
49 Newton Ave.
Woodbury, NJ 08096
     Counsel for Defendants Monroe Township and Monroe Township
     Police Department

POWELL, BIRCHMEIER & POWELL
By: James R. Birchmeier
1891 State Highway 50, P.O. Box 582
Tuckahoe, NJ 08250
     Counsel for Defendants Officer John McBride; Officer Bart
     McIlvaine; Officer Michael J. Doran and Sgt. Robert Clark


**IRENAS**, Senior District Judge:

     Plaintiffs commenced this action on January 12, 2005.

Pending before the Court are two motions: (1) Motion for Summary

Judgment by Defendants Monroe Township and Monroe Township Police Department and (2) Motion for Summary Judgment by Defendants Patrol Officer John McBride, Patrol Officer Bart McIlvaine, Patrol Officer Michael J. Doran, and Sgt. Robert Clark.

Plaintiffs allege nine counts against all defendants:[1] (1) violation of the Fourth and Fourteenth Amendments; (2) false arrest and false imprisonment; (3) negligence; (4) gross negligence; (5) assault and battery; (6) malicious prosecution; (7) abuse of process and misuse of process retaliation; (8) deprivation of federally protected rights under 42 U.S.C. § 1983; and (9) loss of consortium.

For the reasons set forth below, the Motions for Summary Judgment will be granted.

**I.**

This action arises from the Monroe Township Police Department's response to a domestic dispute between Plaintiffs. In the early morning of March 9, 2003, Plaintiffs arrived home from a party where they both had been drinking.  Their oldest daughter, Colleen Bender, drove them home.  The Benders' other two daughters were in the residence.  Mrs. Bender had trouble

---

[1]  Plaintiffs concede that Count VI, VII, and any claims of intentional infliction of emotional distress and negligent infliction of emotional distress should be dismissed.  (Pl. Br., at pp. 12-13).

unlocking and opening the front door, which instigated arguments between Mr. Bender and Mrs. Bender, and between Mr. Bender and Colleen.  Mrs. Bender slapped her husband, who slapped her back. In response, Colleen slapped Mr. Bender and then he slapped her.

The argument continued after the three entered the house and Mrs. Bender retreated to the bathroom, apparently intending to call 911.  Mr. Bender attempted to break down the bathroom door. Colleen Bender went outside onto the front porch and called 911. She told the dispatcher that "[her] dad is hitting [her] mom." (911 Audio Trans. March 9, 2002, Def. Ex. E at 3:4-5). Screaming, arguing and pleas for help were recorded throughout the 911 call.  (*Id.* at 3:19-24, 4:6-10).  Amidst the yelling, the call was abruptly disconnected.  (*Id.* at 4:11).  Mrs. Bender eventually joined Colleen outside the house and Mr. Bender locked them out.

Patrol Officers John McBride, Bart McIllvaine, and Michael Doran were dispatched to the domestic dispute at Plaintiffs' house.  Plaintiffs claim that Sgt. Clark also responded to the domestic dispute, but Defendants deny that allegation.  When they arrived, the responding officers found Mrs. Bender and Colleen locked out of the house.  Mrs. Bender was upset when the police officers arrived.  Further, Defendants claim that Mrs. Bender told Officer Doran that Mr. Bender assaulted both her and Colleen.  Plaintiffs denies this claim.

Mrs. Bender told the Officers that Mr. Bender was locked in the house with two of her daughters and asked the Officers to enter the house by breaking down the front door.  Mr. Bender opened the door, but when he saw the police had arrived, he slammed it closed and refused to open it again.  Through the locked door, Officer Doran placed Mr. Bender under arrest and demanded that he surrender, but Mr. Bender refused.  Officer Duran then kicked in the door.

The Parties have different accounts of what occurred once the Officers entered Plaintiffs' house.  Plaintiffs claim that Mr. Bender raised both of his empty hands in the air when the Officers entered the residence.  Plaintiffs also claim that Mr. Bender was tackled without provocation by the Officers. Plaintiffs further claim that the Officers assaulted Mr. Bender both inside the house and on the front yard when they were transporting him to a patrol car.  These assaults, Plaintiffs claim, broke a bone in Mr. Bender's face.

Defendants claim that when they entered Plaintiffs' residence, Mr. Bender took a "boxer's stance" and held an Allen wrench in a threatening manner.  Defendants also claim that Mr. Bender resisted arrest, which compelled them to forcefully detain him.  Defendants further claim that Mr. Bender assaulted Officers McBride and Duran when they took him to the patrol car. Defendants argue that Mr. Bender's injuries resulted from his

4

repeatedly hitting his face against the partition in the patrol car in a fit of rage, and hitting his face against a table in the house while he was resisting arrest.

Mr. Bender was arrested for domestic assault, resisting arrest and aggravate assault on a police officer.  On March 9, 2003, Mrs. Bender signed a Domestic Violence Civil Complaint and requested a temporary restraining order ("TRO") against her husband.  The Domestic Violence Civil Complaint stated that Mr. Bender "punched" Mrs. Bender and Colleen.[2]  A TRO that prohibited Mr. Bender to return to the family's residence was issued later that day.  Mr. Bender was indicted on six counts, including aggravated assault, terroristic threats, resisting arrest, and possessing an Allen wrench as a weapon.  He eventually pled guilty to one count of aggravated assault on a police officer, for which he was sentenced to non-custodial probation.  The remaining counts of the indictment were dismissed.

## II.

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

---

[2]  Mrs. Bender now disputes the veracity of the statements contained in the Domestic Violence Civil Complaint.  (Pl. Opp. Br. at 5).

the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation and citation omitted; ellipsis in original).

### III.

#### A.

In a § 1983 case,[3] a court is required to consider, as a threshold question, whether the defendant has violated a plaintiff's constitutional rights. This question must be considered in the light most favorable to the party asserting the

---

[3]  Section 1983 is not a source of substantive rights, it is merely "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 (1979).

injury.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  A court must
first "isolate the precise constitutional violation with which
[the defendant] is charged."  *Baker v. McCollan*, 443 U.S. 137,
140 (1979).  Plaintiffs advanced two § 1983 claims: (1) false
arrested and false imprisonment; and (2) excessive force.

Whether Defendant Police Officers used excessive force in
arresting Mr. Bender depends on whether the force used was
reasonable under the Fourth Amendment.[4]  *Graham v. Connor*, 490
U.S. 386, 395 (1989).  "Determining whether the force used to
effect a particular seizure is 'reasonable' under the Fourth
Amendment requires a careful balancing of 'the nature and quality
of the intrusion on the individual's Fourth Amendment interests'
against the countervailing government interests at stake."  *Id.*
at 396 (citing *Garner*, 471 U.S. at 8).  This balancing test is
highly fact specific and each case should be evaluated with
reference to the totality of the circumstances.  *See Garner*, 471
U.S. at 8-9.

In order to evaluate the reasonableness of Defendant Police
Officers' actions, the Court must examine the totality of the
circumstances.  Here, it is undisputed that the police officers
placed Mr. Bender under arrest before they entered his house.  It

_____

[4]  A § 1983 claim alleging excessive force should be
evaluated "solely by reference to the Fourth Amendment's
prohibition against unreasonable seizures of the person" rather
than under a substantive due process approach.  *Graham*, 490 U.S.
at 395 (citing *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985)).

is also undisputed that Mr. Bender refused to open the door after he was told that he's under arrest.  In fact, the police had to kick in the door in order to detain Mr. Bender.  Furthermore, Mr. Bender pled guilty to count of aggravated assault on a police officer.  Thus, undisputed record shows that not only did Mr. Bender resisted arrest, but that he also assaulted the police officer.

Because of Mr. Bender's resistance to arrest and assault of the police officer, the force used by Defendant Police Officers to subdue and detain him is reasonable under the Fourth Amendment.  The Court will grant summary judgment in favor of Defendant Police Officers on the excessive force claims.

To prevail on the false arrest and false imprisonment claims under § 1983, Plaintiff must demonstrate that Defendant Police Officers lacked probable cause to arrest or detain Mr. Bender. *See*, *e.g.*, *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) ("The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense."); *Baker v. McCollan*, 443 U.S. 137, 142-44 (1979) (an arrest based on probable cause could not become source of a claim for false imprisonment).

In general, "the question of probable cause in a § 1983

8

damage suit is an issue for the jury." *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998). However, a court may conclude that probable cause exists as a matter of law if the evidence, when viewed in the light most favorable to the plaintiffs, reasonably would not support a contrary factual finding. *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997).

Probable cause for arrests exists "where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed." *United States v. McGlory*, 968 F.2d 309, 342 (3d Cir. 1992); *see also United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990). Under judicial review, the arresting officer's knowledge should be coupled with "the factual occurrences immediately precipitating the arrest" when determining if probable cause exists. *United States v. Stubbs*, 281 F.3d 109, 122 (3d Cir. 2002).

Viewing the facts in a light most favorable to Plaintiffs, Defendant Police Officers had probable cause to arrest, detain, and charge Mr. Bender. Assuming Plaintiffs account of the facts were entirely accurate, the facts and circumstances within Defendant Police Officers' knowledge can be summarized as the following: (1) a 911 call was made, where screaming, arguing and pleas for help can be heard over the phone and the call was abruptly disconnected; (2) upon their arrival at Plaintiff's

9

residence, Defendant Police Officers found Mrs. Bender and
Colleen Bender locked out of their house; (3) Mrs. Bender and
Colleen told Defendant Police Officers that Mr. Bender had been
drinking; (4) Mrs. Bender expressed concern for the well being of
her other two children that remained in the house with Mr.
Bender; (5) Mr. Bender refused to let his family members or
Defendant Police Officers inside the house, even after Defendant
Police Officers advised him that he was under arrest; and (6)
because Mr. Bender refused to cooperate, Defendant Police
Officers had to break down the door in order to effectuate the
arrest.[5]  These observations are "sufficient to warrant a
reasonable person to believe an offense had been committed."
*McGlory*, 968 F.2d at 342.

The record does not support the claim for false arrest and
false imprisonment.  Therefore, the Court will grant summary
judgment on these claims in favor of Defendant Police Officers.[6]

**B.**

Plaintiffs next claim that under New Jersey state law,

---

[5]  The police had Mrs. Bender's consented to break the door.

[6]  A government official exercising a discretionary function
is entitled to qualified immunity when his conduct does not
violate a clearly established federal right of which a reasonable
person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818
(1982).  Because the Court held that the police did not violate
Plaintiffs' rights, qualified immunity analysis is unnecessary in
this case.

Defendant Police Officers are liable for false arrest, false imprisonment, negligence, gross negligence, assault and battery, and loss of consortium.

The New Jersey Tort Claims Act (the "NJTCA") requires Plaintiffs to give notice to public entities and employees "not later than the ninetieth day after accrual of the cause of action." N.J.S.A. § 59:8-8.  This provision applies to all negligence claims against public entities and employees. However, it only applies to intentional tort claims accrued after June 29, 2004. *Velez v. City of Jersey City*, 180 N.J. 284, 297 (2004).  Plaintiffs' claims in this case accrued in March, 2003, before the date set forth by the New Jersey Supreme Court.

It is undisputed that Plaintiffs failed to provide notice to Defendants regarding their claims.  Therefore, Plaintiffs are barred from asserting their claims of negligence (Count III) and gross negligence (Count IV).  N.J.S.A. § 59:8-8(a).  Defendants' motion for summary judgment will be granted with respect to the negligence claims.

N.J.S.A. § 59:3-3 states, "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law.  Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."  Under this provision, immunity for police officers may be established "if the public employee can show either objective or subjective good

faith." *B.F. v. Division of Youth and Family Serv.*, 296 N.J. Super. 372, 385 (App. Div. 1997); *Green v. City of Paterson*, 971 F. Supp. 891, 910 (D.N.J. 1997).

"False arrest, or false imprisonment, is the constraint of a person without legal justification." *Mesgleski v. Oraboni*, 330 N.J. Super. 10, 24 (App. Div. 2000). In false arrest or false imprisonment, "the essence of the tort consists in depriving the plaintiff of his liberty without lawful justification." *Fair Oaks Hosp. v. Pocrass*, 266 N.J. Super. 140, 153 (Law Div. 1993). Thus, the inquiry for the claims of false arrest and false imprisonment under New Jersey law turns on whether Defendant Police Officers had probable cause for the arrest and detention of Mr. Bender. *See Gerstein v. Pugh*, 420 U.S. 103, 114-15 (1975).

Under New Jersey law, "[n]either a public entity nor a public employee is liable for . . . (b) any injury caused by: . . . (3) a person resisting arrest or evading arrest." N.J.S.A. § 59:5-2(b)(3).

As the Court stated in III. A., *supra*, adequate probable cause existed to arrest and detain Mr. Bender. Also stated in III. A., *supra*, Mr. Bender resisted arrest, assaulted the police officer, and was injured as a result of his own conduct. The Court will grant Defendants' motion for summary judgment with respect to state law claims of false imprisonment, false arrest,

and assault and battery.

"A claim for loss of consortium arises from the marital relationship and is based on the loss of a spouse's services and companionship resulting from an injury." *Acevedo v. Monsignor Donivan High Sch.*, 420 F. Supp. 2d 337, 347 (D.N.J. 2006). "A loss of consortium claim is a derivative claim, 'depending upon the existence of tortious conduct on the part of the defendants.'" *Id.* Because the Court will grant summary judgment with respect to Plaintiffs' assault and battery claim, the Court will also grant summary judgment with respect to Plaintiffs' loss of consortium claim.

### C.

Plaintiffs claim that Defendants Monroe Township and Monroe Township Police Department (collectively "Municipal Defendants") failed to train, supervise, and discipline their police officers and are independently liable under § 1983. Plaintiffs also claim that Municipal Defendants are vicariously liable for Defendant Police Officers' violations of state law.

To hold a public entity independently liable under § 1983, a plaintiff must first establish that a constitutional violation occurred and then must prove a causal link between the violation and the municipality's policy or custom. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

With respect to Plaintiffs' state law vicarious liability claims, "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances."  N.J.S.A. § 59:2-2.  Therefore, whether Municipal Defendants are vicariously liable for the acts of their employees depends on the individual liability of Defendant Police Officers.

As discussed in III. A., *supra*, Defendant Police Officers did not violate any of Mr. Bender's federal rights.  As discussed in III. B., *supra*, the police officers are not liable under state law.  Therefore, the Court will grant Municipal Defendants' motion for summary judgment in its entirety.

## IV.

For reasons set forth above, Defendants' motions for summary judgment will be granted.  The Court will issue an appropriate order.

Date: March 14, 2007

s/Joseph E. Irenas
**JOSEPH E. IRENAS**
Senior United States District Judge

14